AO 91 (Rev. 11/11) Criminal Complaint

**ORIGINAL**

# UNITED STATES DISTRICT COURT
for the
Central District of California

FILED
CLERK, U.S. DISTRICT COURT
OCT 23 2018
CENTRAL DISTRICT OF CALIFORNIA
BY LL DEPUTY

United States of America

v.

JOSE ANTONIO VIVEROS,

Defendant.

Case No. **18-MJ-2773**

## CRIMINAL COMPLAINT

I, the complainant in this case, state that the following is true to the best of my knowledge and belief.

On or about the date of October 4, 2018 in the county of Ventura in the Central District of California, the defendant violated:

| Code Section | Offense Description |
|---|---|
| 21 U.S.C. § 841(a)(1) | Possession with Intent to Distribute a Controlled Substance |

This criminal complaint is based on these facts:

*Please see attached affidavit.*

☒ Continued on the attached sheet.

_____
Complainant's signature

William B. Rose, Special Agent
*Printed name and title*

Sworn to before me and signed in my presence.

Date & Time: October 23, 2018 10AM

_____
Judge's signature

City & State: Santa Barbara, California

Hon. Louise A. LaMothe, U.S. Magistrate Judge
*Printed name and title*

**AFFIDAVIT**

I, William B. Rose, being duly sworn, declare and state as follows:

## I. PURPOSE OF AFFIDAVIT

1. This affidavit is made in support of a criminal complaint and arrest warrant against JOSE ANTONIO VIVEROS ("VIVEROS") for a violation of Title 21, United States Code, Section 841(a)(1): Possession with Intent to Distribute a Controlled Substance.

2. The facts set forth in this affidavit are based upon my personal observations, my training and experience, and information obtained from law enforcement personnel and witnesses.  This affidavit is intended to show merely that there is sufficient probable cause for the requested complaint and arrest warrant, and does not purport to set forth all of my knowledge of or investigation into this matter.  Unless specifically indicated otherwise, all conversations and statements described in this affidavit are related in substance and in part only.

## II. BACKGROUND OF AFFIANT

3. I am a Special Agent ("SA") with the United States Department of Justice, Federal Bureau of Investigation ("FBI") and have been so employed for approximately nineteen years. As an SA, I am a federal agent and empowered by United States law to conduct investigations of, and make arrests for, offenses of federal criminal law.  I have conducted and participated in numerous investigations of criminal activity, including drug and

gang investigations. I have assisted in executing search and arrest warrants, and I have assisted in seizing evidence of violations of United States law.

4. I am currently assigned to investigate criminal street gangs in the Central District of California. I have conducted a number of investigations of criminal street gangs, and I have participated in gang-focused enforcement efforts involving federal and local law enforcement. I have completed multiple hours of formal training on organized crime and money laundering conducted by organized criminal groups.

### III. SUMMARY OF PROBABLE CAUSE

5. On or about October 4, 2018, Oxnard Police Department ("OPD") Officers Steve Eckman and Roque Rivera stopped a car that VIVEROS was driving because the car was speeding. During the traffic stop, the officers suspected VIVEROS was under the influence of drugs and conducted a sobriety test on VIVEROS, which VIVEROS failed. The officers searched VIVEROS's person incident to his arrest and found approximately 73 grams of suspected methamphetamine, a methamphetamine pipe, $2,386 in cash, and 15 suspected Xanax pills in VIVEROS's pockets. During a search of VIVEROS's car, the officers found 9 grams of suspected black tar heroin, and a Glock .45 caliber handgun, loaded with 10 live rounds of .45 caliber ammunition.

### IV. STATEMENT OF PROBABLE CAUSE

6. Based on my review of law enforcement reports, my conversations with other law enforcement agents, my review of

body-worn camera recordings, and my own knowledge of the investigation, I am aware of the following:

### A. Officers Stop VIVEROS in a Car, Determine that VIVEROS Had Been Driving Under the Influence of a Controlled Substance, and Find Drugs on His Person

7.  On or about October 4, 2018, the officers were driving a marked black and white police car on the Pacific Coast Highway ("PCH") in Oxnard, California, when they saw a black Infiniti sedan, bearing California license plate 7WZW901 (the "Infiniti"), driving at a high rate of speed and maneuvering around other cars.

8.  The officers followed the Infiniti, trailing behind it by approximately 300 feet.  As the Infiniti increased its speed and distance in front of the officers, the officers noticed their car's speedometer read 75 miles per hour.  The Infiniti, which was driving faster than the officers' car, was travelling at least 75 miles per hour in a 65 mile per hour zone, in violation of California Vehicle Code 22350.  The officers then turned on their emergency lights and conducted a traffic stop of the Infiniti.

9.  The Infiniti pulled over on the Hueneme Road exit of PCH.  When the officers approached the Infiniti, the officers saw that there was only one person inside the Infiniti.

10. VIVEROS, the driver of the Infiniti, identified himself by name to the officers.  VIVEROS also provided registration for the Infiniti, proof of insurance, and his driver's license to the officers.  As VIVEROS handed over these items for the officers' review, the officers noticed that

VIVEROS's hands were shaking and that he appeared to be very nervous.

11. To further assess VIVEROS's demeanor, the officers engaged VIVEROS in conversation, asking him where he was going. Officers then noticed that VIVEROS's pupils were dilated, which struck the officers as strange because the weather was sunny, and the officers believed that a person's pupils would normally be constricted in sunlight. The officers also noticed that VIVEROS had a pronounced neck pulse. Cumulatively, these signs led the officers to believe that VIVEROS was under the influence of a controlled substance and had been driving while under that influence.

12. To further investigate VIVEROS's sobriety, the officers asked VIVEROS about whether he had used drugs. VIVEROS admitted that he had used "a 20 of cocaine" the previous night. VIVEROS denied using methamphetamine, and he also denied possessing anything illegal in the Infiniti.

13. The officers then asked VIVEROS to get out of the Infiniti so that the officers could conduct a sobriety test on VIVEROS. Prior to doing so, the officers patted down VIVEROS to check for weapons and felt a hard item in VIVEROS's left shorts pocket. Based on plain touch, the officers believed VIVEROS possessed drugs inside of his left pocket, not a weapon. The officers did not reach into VIVEROS's pocket at that time.

14. Based on a pat down of VIVEROS's back pocket, officers felt a hard item with one bulbous end, which the officers believed might have been a pipe used to smoke drugs. Because

the officers did not suspect that the pipe was a weapon, the officers did not retrieve the pipe or investigate it further. Officers did not find any weapons on VIVEROS's person.

15. The officers conducted a sobriety test of VIVEROS and determined that VIVEROS was under the influence of a controlled substance.

16. As the officers began to place VIVEROS under arrest, the officers told him that they intended to conduct a search incident to arrest. VIVEROS then stated, "you were right," and the officers asked VIVEROS what he meant. VIVEROS looked toward his left shorts cargo pocket and said that he possessed "something." The officers then searched VIVEROS's person and found the following:

    a. A used glass methamphetamine pipe;

    b. Two large baggies containing a white crystal-like substance weighing a total of approximately 72.2 grams, which the officers believed to be methamphetamine;

    c. $2,386 in United States currency; and

    d. A baggie containing 15 white pills the officers believed were Xanax.

    **B. Officers Find Additional Drugs and a Loaded Gun in VIVEROS's Car**

17. VIVEROS was transported for booking while the officers awaited the arrival of a tow truck to remove the Infiniti from where it was stopped, on the Hueneme Road exit of PCH. Prior to the arrival of the tow truck, the officers conducted an inventory search of the Infiniti and found the following inside:

      a.    On the front passenger seat of the Infiniti, a plastic bag holding a zippered container, inside of which was a Glock 30, .45 caliber semi-automatic firearm, bearing serial number FHS974;

      b.    Nine rounds of .45 caliber ammunition in the magazine of the Glock and one round of .45 caliber ammunition in the chamber;

      c.    Approximately 9 grams of a dark-colored substance the officers believed, based on their training and experience, to be black tar heroin;

      d.    Ziploc-style sandwich baggies;

      e.    A green leafy substance that officers suspected was marijuana; and

      f.    A police radio scanner, which was on at the time the officers found it, and was scanning the Ventura County Sheriff's Office primary frequency and an OPD frequency.

    **C.    Drug Tests**

    18.  A field test was not conducted on the suspected drugs out of concern for dangerous substances like fentanyl.  Fentanyl is a dangerous synthetic opioid that can be lethal to touch even in very small amounts and with limited contact.  Fentanyl is increasingly prevalent and is often mixed with other drugs, but can still be lethal in mixture form.  For these reasons, law enforcement will transport the suspected drugs to a laboratory to be tested in a controlled facility.

    19.  I believe that the 72.2 grams of a white crystalline substance is methamphetamine and/or another controlled

substance, based on its appearance packaging, the circumstances in which it was found, and that VIVEROS had with him a large amount of cash, many empty plastic baggies, and a gun, all indicative of drug sales.

    **D.**    **VIVEROS's Criminal History**

    20.  On or about October 10, 2018, I reviewed certified conviction documents for VIVEROS and learned that VIVEROS has previously been convicted of the following felony crimes punishable by a term of imprisonment exceeding one year:

    a.  On or about April 13, 2009, a violation of California Heath and Safety Code 11379(a) (Transport Controlled Substance), in the Superior Court for the State of California, County of Ventura, Case Number 2009004568;

    b.  On or about April 16, 2012, violations of California Penal Code Section 12316(b)(1) (Prohibited Person Owning Ammunition), and California Health and Safety Code 11378 (Possession of a Controlled Substance for Sale), in the Superior Court for the State of California, County of Ventura, Case Number 2011044165; and

    c.  On or about April 16, 2012, a violation of California Vehicle Code Section 10851(a) (Taking Vehicle Without the Owner's Consent), in the Superior Court for the State of California, County of Ventura, Case Number 2011044835.

    **E.**    **Interstate Nexus**

    21.  On or about October 15, 2018, an ATF Interstate Nexus Expert examined the Glock firearm and ammunition recovered from inside the Infiniti and confirmed that both were manufactured

outside of the State of California. Because the firearm and ammunition were found in California, I believe that they have traveled in and affected interstate or foreign commerce.

## V. CONCLUSION

22. For all of the reasons described above, there is probable cause to believe that VIVEROS has committed a violation of 21 U.S.C. § 841(a)(1): Possession with Intent to Distribute a Controlled Substance.

William B. Rose, Special Agent
FBI

Subscribed to and sworn before me this 23d day of October, 2018.

UNITED STATES MAGISTRATE JUDGE